| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

(L.F. 18 Rev. 06/08)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

(L.F. 18 Rev. 06/08)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF<br>EDNA J. ROBERTS,<br><br>Debtor,<br><br>_____<br><br>PETS A LONE SANCTUARY OF<br>LINCOLN COUNTY, MISSOURI<br><br>&<br><br>JENNIFER RAEKER-BICKEL<br><br>Creditors-Plaintiffs<br><br>vs.<br><br>EDNA ROBERTS<br><br>Debtor-Defendant<br><br>_____ | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 26-40048<br><br>CHAPTER 13<br><br>Adversary Case No. ___ |

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

COME NOW Creditors-Plaintiffs Pets A Lone Sanctuary of Lincoln County and Jennifer

Raeker-Bickel, by and through their undersigned counsel, and for their Complaint to Determine

Non-Dischargeability of Debt, pursuant to 11 U.S.C. §523(a)(6), state as follows:

**PARTIES, JURISDICTION & VENUE**

1.      Creditor-Plaintiff Pets A Lone Sanctuary of Lincoln County ("PALS") is a non-

profit organization with its principal place of operation in Lincoln County, Missouri.

2.      Creditor-Plaintiff Jennifer Raeker-Bickel ("Raeker-Bickel") is an individual

resident of Lincoln County, Missouri.  At times, PALS and Raeker-Bickel are collectively referred

to as "Plaintiffs."

1

3.      Debtor-Defendant Edna Roberts ("Roberts") is an individual resident of Lincoln County, Missouri.  Roberts resides at 151 Brook Hill Lane, Troy, Missouri 63379.

4.      This Court has jurisdiction over this adversary Complaint pursuant to 28 U.S.C. §§157(a), 1334(a).

5.      This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1408.

### PROCEDURAL BACKGROUND

7.      On January 6, 2026, Roberts filed her Voluntary Petition seeking Chapter 13 Bankruptcy protection.  *See* Case No. 26-40048, Doc. 1.

8.      In her Summary of Assets & Liabilities, Roberts lists only three known creditors, two of which are PALS and Raeker-Bickel.  *See* Case No. 26-40048, p. 13.

9.      PALS and Raeker-Bickel are judgment creditors of Roberts via an August 2, 2024 Judgment (the "Judgment") entered in their favor, and against Roberts, in *PALS, et al v. Roberts*, Lincoln County Circuit Court, State of Missouri Case No. 22L6-CC00104 (the "Underlying Litigation").  A true and accurate copy of the Judgment is attached hereto as **Exhibit A**.

10.     Between the date of Judgment (August 2, 2024) and the date of her Voluntary Petition (January 6, 2026), Roberts went to extraordinary lengths to frustrate and impede Creditors' authorized post-judgment efforts to collect on the Judgment.  As described in detail below, these efforts culminated in the Trial Court issuing in a post-Judgment Contempt Order and Judgment ("Post-Trial Contempt Order"), finding both Roberts and her husband, Ryan Roberts, in willful civil contempt of Court, having knowingly refused to comply with several of the Court's Orders relating to providing testimony and evidence relating to Roberts' means and ability to satisfy the Judgment.  A true and accurate copy of the Post-Trial Contempt Order is attached hereto as **Exhibit**

2

**B**.

11.     Among other things, in the Post-Trial Contempt Order, the Trial Court ordered that if Roberts and her husband did not comply with its prior Orders by December 31, 2025, the Court would issue body attachments for their arrest and confinement in Lincoln County Jail until they purged their contempt.  **Ex. B**.

12.     Neither Roberts nor Mr. Roberts complied with the Post-Trial Contempt Order by December 31, 2025.  Instead, in an ostensible effort to further stymie Creditors' post-judgment rights and to avoid the issuance of an arrest warrant, Roberts filed her Voluntary Petition on January 6, 2026 and filed Suggestions with the Trial Court shortly thereafter.

13.     On March 16, 2026, PALS and Raeker-Bickel filed timely Proofs of Claim evidencing their rights to collection of the Judgment, claiming $328,848.96, which such amount is comprised of the unpaid Judgment principal and recoverable post-judgment interest, recoverable collection and attorneys' fees.

14.     The Judgment was entered in favor of PALS and Raeker-Bickel, jointly.

### THE UNDERLYING LITIGATION

15.     The Underlying Litigation arose, *inter alia*, out of Roberts' willful, malicious and intentionally tortious conduct in (1) defaming Creditors, (2) threatening Creditors, (3) cajoling and convincing a third-party to trespass on to PALS' property and to criminally assault one of its volunteers and, in doing so, (4) knowingly violating a settlement agreement and mutual release which Roberts and Creditors had entered into less than a year beforehand.  A true and accurate copy of Creditors' Petition in the Underlying Litigation, as well as the settlement agreement Roberts violated which was attached thereto, are attached hereto as **Exhibit C**.

16.     The underlying conduct upon which Creditors brought sought against Roberts was

3

willful, malicious and intentionally tortious.  **Ex. C**.

17. Immediately after PALS' property was trespassed and its volunteer was assaulted at Debtor's direction, and upon learning of Debtor's additional defamation and threats, Creditors made an immediate, liquidated demand upon Debtor to cease her misconduct and pay back all of the consideration she received as part of the settlement agreement and mutual release, which had settled prior litigation by and among the parties.

18. Debtor ignored and refused the demand.

19. Creditors initiated the Underlying Litigation on August 16, 2022.

20. Over the course of the next nearly two years of litigation, Roberts undertook a concerted campaign to refuse to comply with the Rules of Civil Procedure, the Rules of Discovery and ultimately, several Orders from the Trial Court sanctioning her and enforcing the same.

21. When the Trial Court determined sanctions were insufficient to compel her compliance with its authority, on September 28, 2023, the Trial Court issued an Order of Civil Contempt against Roberts, financially sanctioning her for her discovery abuse and ordering her to purge her contempt by producing documents and communications she had refused to produce in discovery evidencing and relating to her malicious, intentional and tortious misconduct (the "First Contempt Order").  A true and accurate copy of the Court's First Contempt Order is attached hereto as **Exhibit D**.

22. Roberts did not purge her contempt.  Instead, after Creditors were forced to bring a motion to enforce the Court's First Contempt 2023 Order, the Trial Court issued an additional Order of Contempt and Interlocutory Judgment against Roberts on January 16, 2024 (the "Interlocutory Judgment").  A true  and accurate copy of the Court's Interlocutory Judgment is attached hereto as **Exhibit E**.

4

23.     In the Interlocutory Judgment, the Trial Court struck Roberts' pleadings and granted interlocutory judgment in favor of Creditors.  *Id.* at p. 3.

24.     As a matter of Missouri law, because Roberts' Answer to Creditors' Petition was stricken, the legal effect is the same as if no responsive pleadings had been filed.  Thus, pursuant to MO. REV. STAT. §509.100, all allegations in Creditors' Petition – including those of Roberts' willful, malicious and intentional  tortious conduct – were deemed to be admitted.

25.     Importantly, up and through the Court's Interlocutory Judgment, Roberts was represented by counsel and Roberts personally appeared at every relevant hearing.

26.     Roberts was fully aware of her continued contempt of Court, at all times, as well as the consequences of the same, including the Court's admonition that "continued failure of [Roberts] to comply may well result in her pleadings being stricken and a judgment by default being entered." **Ex. D** , p. 3.

27.     On July 2, 2024, the Trial Court conducted a bench trial to determine Creditors' damages, wherein it received evidence of Creditors' damages as well, Debtor's intentional misconduct and her nearly two years of discovery abuse, misconduct and contempt.

28.     The Trial Court's Judgment followed a month later, on August 2, 2024.  **Ex. A.**

29.     Roberts' flagrant disregard for the Rules and the Trial Court's authority only increased after Judgment was issued when Creditors undertook authorized collection efforts.

30.     On November 25, 2024, the Trial Court granted Creditors' Verified Motion for Examination of Judgment Debtor and issued an Order of Citation to Roberts (the "Citation").  A true and accurate copy of the Citation is attached hereto as **Exhibit F**.

31.     Roberts refused to comply with the Citation, forcing Creditors to move to enforce it, which the Court granted, forcing Roberts to testify in open court at which she admitted she

failed to comply and swore that she was not in possession of her own financial documents.

32.    Creditors then subpoenaed Roberts' known bank, Commerce Bank, to obtain the documents the Trial Court had ordered Roberts to provide.  Roberts sought to quash Creditors' subpoena, which the Trial Court overruled on May 21, 2025.  A true and accurate copy of the Court's Order is attached hereto as **Exhibit G**.

33.    Two months later, after Creditors subpoenaed Mr. Roberts to produce the documents Roberts refused to produce, Roberts filed a new meritless, frivolous lawsuit against Creditors (and Creditors' counsel) and used it as pretext to move to stay Creditors' collection efforts and to move quash the subpoena to Mr. Roberts.  The Trial Court summarily overruled both of Roberts' Motions.  A true and accurate copy of the Court's Order on these motions is attached hereto as **Exhibit H**.

34.    Roberts' new frivolous lawsuit was dismissed on August 26, 2025.

35.    Meanwhile, the Court had ordered Mr. Roberts to appear for deposition and produce the documents Roberts had been withholding, ordering him to appear for deposition on July 7, 2025.

36.    Mr. Roberts knowingly failed to appear at deposition, which forced Creditors to file an additional Motion for Contempt and for Sanctions against both Roberts and Mr. Roberts.  The Court granted this Motion on October 31, 2025, sanctioning them both, ordering that they fully comply with the Trial Court's post-Judgment rulings and ordering that they purge their contempt by December 31, 2025, or else the Court would issue a body attachment and arrest warrant against them both.  **Ex. B**.

37.    Neither Roberts nor Mr. Roberts complied.  Instead, Roberts filed her Voluntary Petition seeking Chapter 13 Bankruptcy protection on January 6, 2026 before the Court could issue

its warrants and to stay Creditors' collection efforts.

**COUNT I: 11 U.S.C. §523(A)(6)**

38.     Creditors re-allege and incorporate by reference each of their allegations above as if set forth herein.

39.     Creditors re-allege and incorporate by reference each of the allegations in their Petition in the Underlying Litigation as if set forth therein, specifically but not limited to the allegations demonstrating Roberts' willful, malicious and intentionally tortious conduct in (1) her defaming Creditors, (2) her threatening Creditors, (3) her cajoling and convincing a third-party to trespass on to PALS' property and criminally assault one of its volunteers and, in doing so, (4) knowingly violating the settlement agreement. *See* Petition, ¶¶13-59.

40.     Pursuant to 11 U.S.C. §523(a)(6), a debt is not dischargeable in bankruptcy if the debtor willfully and maliciously injured creditors or their property.

41.     As a matter of Missouri law, each of the facts in Creditors' Petition has been adjudicated to be true by the Trial Court, which entered Judgment and found Roberts liable for the same.

42.     Roberts is precluded from denying the truth of the allegations in Creditors' Petition in the Underlying Litigation by the doctrines of collateral estoppel and *res judicata*.

43.     Creditors' Petition in the Underlying Litigation was brought as a breach of the settlement agreement Creditors and Roberts had previously entered into; however, the conduct alleged and adjudicated to be true by the Trial Court was intentional tortious conduct under Missouri law, specifically but not limited to actionable defamation, aiding and abetting a third-party's assault, intentional interference with PALS' business and intentional spoliation of evidence.

44.     Roberts intended to harm and injure Creditors.

7

45.     Roberts' intent to harm and injure Creditors is only further buttressed by her subsequent years of discovery abuse, destruction and concealment of evidence, sanctionable misconduct and knowing contempt of Court.

46.     The conduct for which Roberts was found liable was more culpable than which is in reckless disregard for Creditors' economic interests and expectancies, and therefore she inflicted malicious and intentional injury and damage to Creditors.

47.     Pursuant to 11 U.S.C. §523(a)(6), Roberts' debt to Creditors is not dischargeable.

WHEREFORE, Creditors respectfully request that the Court issue an Order and Judgment in their favor and against Roberts, declaring that Roberts' debts to Creditors are not dischargeable, pursuant to 11 U.S.C. §523(a)(6), awarding Creditors their recoverable attorneys' fees and costs incurred herein and to provide Creditors any such other and further relief the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED,

THE COOK GROUP, PLLC


*/s/ Brian M. Wacker*
Brian M. Wacker, #61913
701 Market Street, Suite 1225
Saint Louis, Missouri 63101
Ph: 314-882-9869
Fax: 347-712-3215
bwacker@cookgrouplegal.com

ATTORNEYS FOR CREDITORS

8

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 6th day of April, 2026, the foregoing was filed electronically, to be served by operation of the Court's CM/ECF filing system upon all parties of record.

<u>     */s/*     *Brian M. Wacker*     </u>