Exhibit C
22L6-CC00104

**Petition Filed Under Seal**

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

## IN THE CIRCUIT COURT OF LINCOLN COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| PETS A LONE SANCTUARY OF LINCOLN COUNTY, et al, | § § § | |
| Plaintiffs | § § | Case No. __ |
| vs. | § § | **PETITION** |
| | § | **FILED UNDER SEAL** |
| EDNA ROBERTS **Serve at:** 151 Brook Hill Lane Troy, Missouri 63379 | § § § § § § | |
| Defendant. | § | |

## PETITION

COME NOW Plaintiffs Pets A Lone Sanctuary of Lincoln County and Jennifer Raeker-Bickel, by and through their undersigned counsel, and for their Petition against Defendant Edna Roberts, state as follows:

### THE PARTIES

1.      Plaintiff Pets A Lone Sanctuary of Lincoln County ("PALS") is a non-profit organization with its principal place of operation in Lincoln County, Missouri.

2.      Plaintiff Jennifer Raeker-Bickel ("Raeker-Bickel") is an individual resident of Lincoln County, Missouri.  At times herein, PALS and Raeker-Bickel are collectively referred to as "Plaintiffs."

3.      Defendant Edna Roberts ("Roberts") is an individual resident of Lincoln County, Missouri.  Upon Plaintiffs' best information and belief, Roberts resides at 151 Brook Hill Lane, Troy, Missouri 63379 and can be served with process at that location.

4.      At all relevant times hereto, Roberts has operated a Facebook account under the username "edna.roberts.33," which is accessible to the general public and through which she can

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

**Petition Filed Under Seal**

send direct messages to other Facebook users, at www.facebook.com/edna.roberts.33.

### JURISDICTION & VENUE

5.      Jurisdiction is proper in this state as all parties are residents of Missouri.

6.      Venue proper in this Court, pursuant to MO. REV. STAT. §508.010.2(1).

### THE SETTLEMENT AGREEMENT

7.      Previously, Plaintiffs, on the one hand, and Roberts, on the other hand, were parties to, and made claims and allegations against one another during the course of, various litigation taking place in the Circuit Court of Lincoln County, Missouri, more specifically described in the pleadings in cases in this Court in Case Nos. 17L6-CC00153, 17L6-CC00154, 19L6-CC00112, 20L6-CC00009 and 20L6-CC00131 (the "Underlying Lawsuits").

8.      No final judgment was entered in any of the Underlying Lawsuits and each party denied and continues to deny each of the allegations and claims asserted in the Underlying Lawsuits.

9.      On or about October 27, 2021, the Parties entered into a Confidential Settlement Agreement and Mutual Release (the "Settlement Agreement"), whereby in exchange for the material consideration, mutual promises, covenants and agreements articulated therein, they agreed to release each other from the various claims and defenses asserted in the Underlying Lawsuits and to dismiss the Underlying Lawsuits, with prejudice, which they ultimately did following execution of the Settlement Agreement.  A true and accurate copy of the executed Settlement Agreement is attached hereto as **Exhibit A**.[1]

---

[1] In the Settlement Agreement, the Parties expressly agreed that existence, terms and covenants of the Settlement Agreement were and are to remain confidential and not disclosed to any person or entity who is not a party to the Settlement Agreement.  Due to the strict confidential nature of the Settlement Agreement, this Petition is has been filed under seal with the Court to avoid its dissemination and disclosure.

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

**Petition Filed Under Seal**

10.    Among other covenants and obligations in the Settlement Agreement, the Parties agreed, in exchange for the consideration described therein, to the following:

a.    the Parties agreed to not make any communications or engage in any conduct designed to disparage each other, including PALS' officers, directors, employees, volunteers, agents or representatives, regarding any of the alleged conduct or facts at issue in the Underlying Lawsuits or the Underlying Lawsuits themselves.

b.    the Parties agreed, for a period of one year, to not make any communications or engage in any conduct designed to disparage each other, including PALS' officers, directors, employees, volunteers, agents or representatives with respect to "any matter whatsoever."

c.    the Parties agreed that they, nor anyone acting on their behalves, would not enter any property owned by each other without the respective property owner's prior written consent, which included PALS' shelter location located at 4287 State Highway 47, Hawk Point, Missouri 63349.

d.    Roberts agreed and acknowledged that she would not have any communications regarding PALS or Raeker-Bickel with any of PALS' corporate donors, vendors or sponsors and that she would not interfere with, or attempt to interfere with, PALS' relationships with them.

e.    the Parties agreed and acknowledged that they would act in good faith to comply with the foregoing and expressly agreed and understood that they were reasonably relying on the foregoing and that the foregoing was a material inducement to the Parties' assent to the Settlement Agreement, including any consideration exchanged by and between the Parties.

**Petition Filed Under Seal**

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

**Ex. A**, ¶¶6.1-6.7, 7.3.

11.     PALS has performed each of its obligations under the Settlement Agreement.

12.     Raeker-Bickel has performed each of her obligations under the Settlement Agreement.

### ROBERTS' BREACH OF THE SETTLEMENT AGREEMENT

13.     Roberts has breached her obligations under the Settlement Agreement.

14.     On best information and belief, Dogwood Sanctuary is a non-profit animal shelter located in Lincoln County, Missouri.

15.     Dogwood Sanctuary has in the past and continues to donate to and partner with PALS in order to effectuate their respective non-profit missions of providing care and shelter for lost pets and, when possible, ultimately reuniting them with their owners.  This includes, when necessary to effectuate those missions, transferring animals in their care from shelter to shelter.

16.     The relationship between PALS and Dogwood Sanctuary is well-known in Lincoln County and in the animal rescue community.

17.     In April, 2022, Roberts was aware of the existence and nature of the relationship between PALS and Dogwood Sanctuary.

18.     On best information and belief, on or about April 8, 2022, Dogwood Sanctuary received a stray dog named Copper, which had been recovered and turned over to it by one of its owner's neighbors.

19.     On best information and belief, for the next ten days, Dogwood Sanctuary undertook efforts to search for and identify the dog's owner, including posting on social media.

20.     On best information and belief, or about April 18, 2022, Michael Bruner, the alleged owner of the dog, contacted Dogwood Sanctuary and verbally berated the shelter and its

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

owner, claiming that she had stolen the dog.  On further information and belief, these communications ended with Mr. Bruner cursing Dogwood Sanctuary's owner and telling her that he did not want the dog and that Dogwood Sanctuary could keep it.

21.     On best information and belief, at or around the same time Mr. Bruner contacted Dogwood Sanctuary, Roberts undertook a campaign to pressure and intimidate Dogwood Sanctuary regarding Mr. Bruner's alleged dog.

22.     On information and belief, Roberts began posting false statements regarding Mr. Bruner's interactions with Dogwood Sanctuary on social media, including but not limited to on Facebook.

23.     When informed by Dogwood Sanctuary that the statements she posted were false, Roberts confirmed in writing that she had been communicating with Mr. Bruner, admitting that she did not know the truth of what she posted but rather stating that "I am telling the truth as [Mr. Bruner] told it to me."  She further threatened Dogwood Sanctuary, indicating that despite being informed of and having knowledge of the falsity of her published statements, she would only "remove the post after [Mr. Bruner] has his dog back."

24.     Later, Roberts again confirmed that she had been communicating with Mr. Bruner via electronic means, admitting and threatening that she "could always post my conversation with him via text message if you'd like …."  Roberts then conceded the truth of the owner of Dogwood Sanctuary's response to her post and the falsity of her own posts, stating "and I might add that he was very angry and tired of listening to you ask him unnecessary questions, so he hung up."  She then further conceded the truth of the owner of Dogwood Sanctuary's post and the falsity of her own post, stating that "[Mr. Bruner] (the owner) was very frustrated and sometimes we say things we don't mean out of anger like (then just keep my dog) after someone tells him it's going to cost

**Petition Filed Under Seal**

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

money to get the dog back."

25.     Throughout the foregoing, on best information and belief, Roberts maintained text message and/or Facebook message communications with Mr. Bruner, which she admitted to doing and published on social media, including informing Mr. Bruner that "Well I'm here to help you however I can to get your buddy back.  And when you do I'll microchip him for you :)".

26.     On best information and belief, based on the viciousness, intensity and persistence of Mr. Bruner's verbal attacks on Dogwood Sanctuary and its owner, Dogwood Sanctuary became wary of allowing Mr. Bruner on its property to retrieve the dog, as he had created a severe apprehension of physical harm by his conduct, all of which was encouraged and urged on by Roberts.

27.     Due to the fear of physical harm occasioned by Mr. Bruner's conduct, which was encouraged and urged on by Roberts, Dogwood Sanctuary made the decision to transfer the dog to PALS via a shelter-to-shelter transfer on April 19, 2022 and it immediately informed Mr. Bruner of the same.

28.     Mr. Bruner then sent a written message to Roberts, informing her that he was "supposed to go up to PALS in Hawk Point at 5.30 and pay some gal named Jennifer 50 dollars."

29.     The "PALS in Hawk Point" referred to by Mr. Bruner is PALS' shelter at 4287 State Highway 47, Hawk Point, Missouri 63349.

30.     At the time she received the message from Mr. Bruner, Roberts knew and understood that "PALS in Hawk Point" was PALS' shelter at 4287 State Highway 47, Hawk Point, Missouri 63349.

31.     The "gal named Jennifer" referred to by Mr. Bruner is Raeker-Bickel.

**Petition Filed Under Seal**

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

32.     At the time she received the message from Mr. Bruner, Roberts knew and understood that the "gal named Jennifer" referred to by Mr. Bruner wass Raeker-Bickel.

33.     The "50 dollars" referred to by Mr. Bruner is the recovery fee PALS requests from owners.

34.     At the time she received the message from Mr. Bruner, Roberts knew and understood that the "50 dollars" referred to by Mr. Bruner was the recovery fee PALS requests from owners.

35.     Roberts responded to Mr. Bruner: "No don't.  Don't pay her anything."

36.     The "her" referenced in Roberts' message is Raeker-Bickel.

37.     The instruction to not "pay her anything" was an instruction to Mr. Bruner to not pay PALS the recovery fee it requests from owners.

38.     Roberts would later sent a screenshot of this exchange to the owner of Dogwood Sanctuary, reproduced here:



**Petition Filed Under Seal**

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

39.     Roberts then threatened the owners of Dogwood Sanctuary that "[t]his wasn't too bright."

40.     On best information and belief, Roberts deleted this message conversation with the owner of Dogwood Sanctuary.

41.     On best information and belief, Roberts deleted her message conversations with Mr. Bruner from April, 2022.

42.     In threatening that "this wasn't took bright," Roberts was threatening more conflict to come by way of her continued harassment and her sustained encouragement and urging of Mr. Bruner to entered on to PALS' property to conduct himself in the manner described below.

43.     That evening, April 19, 2022, Mr. Bruner went to PALS' shelter at 4287 State Highway 47, Hawk Point, Missouri 63349, following his communications with Roberts and at her encouragement and urging.

44.     Mr. Bruner entered PALS' shelter in a menacing and violent manner.

45.     When Mr. Bruner entered PALS' shelter, he was acting, in part, on behalf of Roberts, at her direction, encouragement and/or behest.

46.     Raeker-Bickel was at the shelter's reception area with Mr. Bruner entered the building.  Mr. Bruner immediately accosted Raeker-Bickel, screamed profanities at her and threatened her.  Among other things, Mr. Bruner directed false allegations directed at PALS and Raeker-Bickel, including that he had been told that PALS and Raeker-Bickel steal animals from their owners for money.

47.     During his tirade, Mr. Bruner exclaimed that he had never even heard of PALS or Raeker-Bickel prior to losing his dog and his communications with Roberts.

48.     In her communications with Mr. Bruner, in addition to directing him not to pay

**Petition Filed Under Seal**

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

PALS the required recovery fee to recover his dog, Roberts falsely informed Mr. Bruner that PALS and Raeker-Bickel stole animals from their owners.

49.     PALS requesting a recovery fee from owners after their animals have been rescued – and Roberts' alleged defamatory statements directed towards PALS – was a subject matter of the Underlying Lawsuits which were resolved and released by the Settlement Agreement.

50.     The false and defamatory allegation that PALS and Raeker-Bickel stole animals from their owners was a subject matter of the Underlying Lawsuits which was resolved and released by the Settlement Agreement.

51.     As part of his outburst directed at Plaintiffs, Mr. Bruner refused to pay the $50 recovery fee to PALS, which Raeker-Bickel explained was used to partially recover costs associated with the retrieval and care for Mr. Bruner's dog.

52.     Mr. Bruner relented and agreed to pay the recovery fee to PALS, but continued his tirade, creating apprehension in Raeker-Bickel as well as another volunteer present at the time. Mr. Bruner repeatedly exclaimed that he intended to get "revenge" upon Plaintiffs and Dogwood Sanctuary and expressed an intention to run over the owner of Dogwood Sanctuary, Plaintiffs' donor and partner, with his truck if he saw her.  Mr. Bruner also menacingly yelled at a volunteer present at the PALS' shelter, causing her apprehension and fear for her personal safety.

53.     PALS returned the dog to Mr. Bruner and he left PALS' shelter building, violently slamming the door and exclaiming, once again, that he intended to exact "revenge" upon Plaintiffs and Dogwood Sanctuary.

54.     When Mr. Bruner went to his truck parked in PALS' parking lot, he violently grabbed Copper by its neck and tail and threw the dog into the truck's bed, cursing at the dog.  He then exclaimed that he wished he "would have just shot the motherfucker," referring to the dog.

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

**Petition Filed Under Seal**

55.     Due the viciousness, intensity and duration of Mr. Bruner's behavior, assault and threats directed towards Plaintiffs and Dogwood Sanctuary, Raeker-Bickel and the volunteer who witnessed and was subject to Mr. Bruner's conduct were very intimidated and frightened.

56.     After investigating Mr. Bruner's conduct described above, the Lincoln County Sheriff's Department concluded that it had probable cause to believe that Mr. Bruner committed the criminal offense of assault.  The Sheriff's Department requested an arrest warrant be issued for Mr. Bruner based on its reasonable grounds to believe that Mr. Bruner, *inter alia*, poses a danger to PALS, Raeker-Bickel and PALS' volunteer and the community.

57.     Mr. Bruner's conduct described above followed his written and verbal communications with Roberts, in which she encouraged and urged him to confront PALS and Raeker-Bickel, made false statements intended to disparage PALS and Raeker-Bickel to Mr. Bruner, and encouraged him to interfere with PALS' operations by, among other things, refusing to pay the requested recovery fee.

58.     Roberts' conduct above and communications with Mr. Bruner regarding PALS and Raeker-Bickel, and the content thereof, constitute a material breach of obligations in the Settlement Agreement.

59.     Upon best information and belief, Roberts has erased, manipulated, altered and/or destroyed each of her written communications with Mr. Bruner, including Facebook Messenger messages, direct messages, Facebook posts and text messages.  She did so consciously with knowledge that such communications with Mr. Bruner were evidence of her breach of her obligations under the Settlement Agreement, with the intent to destroy evidence thereof and to hinder Plaintiffs' ability to pursue their remedies under the Settlement Agreement.

Petition Filed Under Seal

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

### COUNT I – BREACH OF SETTLEMENT AGREEMENT

60.     Plaintiffs re-allege and incorporate by reference each of their allegations in ¶¶1-59 above as if set forth fully herein.

61.     Plaintiffs, on the one hand, and Roberts, on the other hand, entered into the Settlement Agreement on or about October 27, 2021.

62.     As described above and articulated in the Settlement Agreement attached hereto, there were and are mutual obligations arising thereunder, including Roberts' agreement to not disparage Plaintiffs, to not interfere with PALS' business and relationships and to not have anyone enter onto PALS' property on her behalf without prior written consent.

63.     In the Settlement Agreement, Roberts expressed that she agreed and understood that her promise to comply with the above obligations therein, specifically the non-disparagement obligations, was a material inducement to Plaintiffs' assent to the Settlement Agreement.

64.     The Settlement Agreement and the non-disparagement obligations were supported by adequate consideration, which included a monetary payment to Roberts.

65.     PALS performed each of its obligations under the Settlement Agreement.

66.     Raeker-Bickel performed each of her obligations under the Settlement Agreement.

67.     Roberts has breached her obligations under the Settlement Agreement as the result of, *inter alia*, the conduct described herein.

68.     As the result of Roberts' breach of the Settlement Agreement, Plaintiffs have been damaged in at least the amount of the consideration paid to Roberts in the Settlement Agreement, as well as being deprived of the benefit of the obligations bargained for therein.  The exact amount of Plaintiffs' damage will be determined at trial.

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM

**Petition Filed Under Seal**

69.    As demonstrated above, Roberts has intentionally destroyed and/or altered material evidence to Plaintiffs' claims and, given the foregoing, the circumstances are such that she did so fraudulently, deceitfully and/or with bad faith.  Accordingly, at trial of this matter, Plaintiffs are entitled to an adverse evidentiary inference whereby Roberts must admit that the missing evidence would have been unfavorable to any asserted defenses or positions she may assert.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Roberts, that the Court enter an award of damages in excess of $25,000, for pre-and post-judgment interest at the highest rate permitted by law, for an award of her recoverable costs and fees incurred herein and that the Court provide Plaintiffs any such other and further relief it deems just and proper under the circumstances.

## COUNT II – UNJUST ENRICHMENT

70.    Plaintiffs re-allege and incorporate by reference each of their allegations in ¶¶1-69 above as if set forth fully herein.

71.    Plaintiffs conferred a benefit upon Roberts, including but not limited to, the consideration she received from Plaintiffs pursuant to the Settlement Agreement.

72.    Roberts has accepted and appreciated the benefit Plaintiffs conferred upon her.

73.    Roberts has retained the benefit Plaintiffs conferred upon her.

74.    In light of the facts alleged herein, including Roberts' conduct, it would be and is unjust for Roberts to continue to retain the benefit under the circumstances.

75.    Plaintiffs have been damaged in the amount of the value of the benefit they conferred upon Roberts and are entitled to restitution of said amount.

76.    As demonstrated above, Roberts has intentionally destroyed and/or altered material evidence to Plaintiffs' claims and, given the foregoing, the circumstances are such that she did so

# IN THE
## CIRCUIT COURT OF
# LINCOLN COUNTY

PETS A LONE SANCTUARY OF
LINCOLN COUNTY

VS.

EDNA J. ROBERTS, ET AL.

CAUSE NO. 17L6 - CC00153

ON ROBERTS' MOTION TO ENFORCE SETTLEMENT AND
MOTION FOR APPROVAL OF MUTUAL RELEASE, THE
PARTIES APPEAR BY COUNSEL OF RECORD AND
CAROL WIEMAN APPEARS WITHOUT COUNSEL. (MIKE LUTKE
APPEARED BY TELEPHONE.)
AFTER HEARING THE PARTIES ARGUMENTS, ~~THE~~
~~PARTIES~~ BRIAN WACKEL, BEN FLETCHER, TED PASINOS
AND MIKE LUTKE HAVE AGREED TO SETTLEMENT
TERMS REFLECTED IN THE ATTACHED EXHIBIT 100 ON BEHALF
OF PETS A LONE SANCTUARY, EDNA ROBERTS AND
MEGON LUTKE.
THE ATTACHED EXHIBIT IS FILED UNDER SEAL.

THE COURT HEREBY AUTHORIZES THE CLERK TO FILE
THE ATTACHED EXHIBIT UNDER SEAL.

Dated this ___27TH___ day of ___OCTOBER_____, 20 _21_

SO ORDERED:

_____, 61913
**Attorney for Plaintiff/Petitioner**

_____ 32594
**Attorney for Defendant/Respondent**
Roberts

_____
**Judge**
**Division No.** _____

6/2011

## <u>CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE</u>

This CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE ("Agreement") is entered into by and between Edna J. Roberts ("Roberts"), Pets A Lone Sanctuary of Lincoln County ("PALS") and Jennifer Raeker-Bickel ("Raeker-Bickel") (collectively referred to herein as the "Parties" and each one individually as a "Party").

### RECITALS

WHEREAS, Roberts, PALS, and Raeker-Bickel are parties to and have each made certain claims and allegations against one another during the course of various litigation taking place in the Circuit Court of Lincoln County, Missouri, as is more specifically described in the pleadings filed in Case Numbers 17L6-CC00153, 17L6-CC00154, 19L6-CC00112, 20L6-CC00009, 20L6-CC00131 (collectively, the "Lawsuits");

WHEREAS, no final judgment has been entered in any of the Lawsuits and each Party has denied and  continues to deny any and all of the allegations and claims asserted against her/it in the Lawsuits;

WHEREAS, *bona fide* disputes and controversies exist among the Parties, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies, and they desire to compromise and settle fully and finally, by the execution of this Agreement, all claims and causes of action of any kind whatsoever, whether known or unknown, that were presented or could have been presented in the Lawsuits;

NOW THEREFORE, for and in consideration of the above recitals and the mutual promises, covenants and agreements set forth herein, and the benefits flowing therefrom, and other good and valuable consideration, the adequacy of which the Parties acknowledge of all purposes, the Parties covenant and agree as follows:

### 1.    <u>Release and Discharge</u>

1.1    In consideration of the payments provided for in this Agreement, Roberts hereby completely and forever releases, acquits and discharges PALS and Raeker-Bickel, and their respective past and present officers, directors (including but not limited to Barbra Cherry, Erica Sloan, Teresa M. Turley, and Laura Di Stefano), attorneys (including those at SmithAmundsen, LLC and Evans & Dixon, LLC), agents, principals, servants, representatives, heirs, employees, volunteers, executors, administrators, predecessors and successors in interest, parent companies, subsidiaries, affiliates, insurers (including Midwest Family Mutual), assigns, and all others liable or claimed to be liable on their behalf, which are or might be claimed to be liable for any and all of the claims, demands, actions, causes of actions, damages (whether they be economic, non-economic, consequential, punitive, treble, or nominal), injuries, liabilities, costs, and attorney's fees whatsoever of any and every kind and description, whether known or unknown, now existing or hereafter arising from, by reason of or in connection with any of the claims/counts/allegations raised in any of the Lawsuits or the underlying conduct, events, or occurrences described therein (the "Claims/Liabilities"), including but not limited to Claims/Liabilities based on tort, contract,

Page 1 of 10

EXHIBIT

tabbles'

i ⊘ ⊖

10-27-21

or any other common law or statutory cause of action or any violation of any statutory or regulatory obligations.

1.2    In consideration for the covenants and representations in this Agreement, PALS and Raeker-Bickel, individually and collectively, hereby completely and forever releases, acquits and discharges Roberts and her past, present, and future heirs which are or might be claimed to be liable for any and all of the claims, demands, actions, causes of actions, damages (whether they be economic, non-economic, consequential, punitive, treble, or nominal), injuries, liabilities, costs, and attorney's fees whatsoever of any and every kind and description, whether known or unknown, now existing or hereafter arising from, by reason of or in connection with any of the claims/counts/allegations raised in any of the Lawsuits or the underlying conduct, events, or occurrences described therein (the "Claims/Liabilities"), including but not limited to Claims/Liabilities based on tort, contract, or any other common law or statutory cause of action or any violation of any statutory or regulatory obligations.

1.3    Roberts specifically agrees that PALS and Raeker-Bickel and their respective past and present officers, directors (including but not limited to Barbra Cherry, Erica Sloan, Teresa M. Turley, and Laura Di Stefano), attorneys (including those at SmithAmundsen, LLC and Evans & Dixon, LLC), agents, principals, servants, representatives, heirs, employees, volunteers, executors, administrators, predecessors and successors in interest, parent companies, subsidiaries, affiliates, insurers (including Midwest Family Mutual) and assigns shall be released and discharged from any liability from any and all medical liens or attorney liens associated with any of her claimed damages in any of the Lawsuits or any settlement proceeds received in connection with the same, including but not limited to medical liens or attorney liens arising from or relating to the treatment or services received from Dr. Franco Sicuro, Theodore Pashos, Pashos Law, LLC, James E. Carmichael, or Niedner, Bodeux, Carmichael, Huff & Lenox, LLP.   Roberts further represents and agrees that she is unaware of any medical liens or attorney liens associated with any of her claimed damages in any of the Lawsuits or any of the settlement proceeds she receives in connection with the same and has no knowledge of any notices of such liens asserted in accordance with MO. REV. STAT. §430.420 or MO. REV. STAT. §484.140. Roberts further represents and agrees that she has not assigned any portion of her claims in the Lawsuits to any person or entity.  Roberts further represents that she is unaware and has no knowledge of any person or entity claiming to have an interest in any of her claimed damages in the Lawsuits or any settlement proceeds received in connection with the same.  Roberts further agrees to defend, indemnify, and hold harmless PALS and Raeker-Bickel against any claim, demand, action, cost, expense, attorney's fees, loss, judgment, or liability that either may be subjected to by any person or entity with a valid lien against or interest in the settlement proceeds described in Section 2 of this Agreement.

1.4    The Parties knowingly waive, and assume the risk of, any and all claims of any nature whatsoever now existing against any other Party as of the date of this Agreement, including those which are known to exist and those which may hereafter arise but are not known or suspected to exist, including without limitation to claims which, if known, would have materially affected the any Party's decision to enter into this Agreement. The Parties hereby confirm that they understand that the facts relating to those described in the allegations and claims made in any of the Lawsuits may turn out to be other than or different from the facts now known or believed by them to be true; the Parties knowingly assume that risk and acknowledge and agree that this Agreement shall

BF 10/27/21    TCP 10-27-21
BW 11/27    MWittle by TCP 10-27-21

Page **2** of **10**

remain in effect and shall not be subject to termination or revocation by reason of any such different facts.

## 2. Confidential Settlement Payment

2.1    Roberts will accept payment of Two Hundred Twenty-Five Thousand Dollars and 00/100 ($225,000.00) (the "Confidential Settlement Payment"), in full and final settlement of any and all claims that she has or in the future could or might have against PALS or Raeker-Bickel, arising out of any of the matters, claims, or facts alleged in any of the Lawsuits.

2.2    The Confidential Settlement Payment shall be delivered to Roberts' attorney, Theodore G. Pashos at Pashos Law LLC, 814 First Capitol Drive, St. Charles, Missouri 63301, and considered accepted upon delivery.

2.3    The Confidential Settlement Payment shall be delivered within ten (10) days of execution by the last Party to this Agreement.

## 3. Dismissals with Prejudice

3.1    Within five (5) days of delivery and acceptance of the Confidential Settlement Payment, the Parties agree to file a joint dismissal with prejudice of all claims in the lawsuits pending in the Circuit Court of Lincoln County and having the case numbers of 17L6-CC00153, 20L6-CC00009, and 20L6-CC00131.

## 4. Non-Admission of Liability

4.1    The Parties each agree and acknowledge that this Agreement is a compromise of disputed claims and is not an admission by any Party of liability or wrongdoing of any kind or intended to be construed as such.

4.2    Each Party further agrees not to make any oral or written representation or statement of any kind (including but not limited to via Facebook, Twitter, Instagram, LinkedIn, SnapChat, TikTok) which contradict or are otherwise inconsistent with the mutually agreed upon term contained in Section 4.1 above.

## 5. Non-Disclosure and Confidentiality

The Parties agree and acknowledge that this Agreement, its existence, and its terms (including but not limited to the amount or existence of the Confidential Settlement Payment) shall remain confidential and not be disclosed, ~~either directly or indirectly~~, to any person or entity who is not named as a Party to this Agreement. The Parties further agree and acknowledge that this Section 5.1 of the Agreement prohibits them, and anyone acting on her behalf including her attorney(s), from making any oral or written statement to any non-party to this Agreement about: the fact or terms of her settlement; the allegations made in the Lawsuits; the arguments and legal theories advanced by any Party in the Lawsuits; the amount of the Confidential Settlement Payment; or the

BF 10/27/21    RcP 10/27/21                    Page **3** of **10**
BW 10/27                    McCutcheon RP 10-27-21

fact that any payment has been made to Roberts as part of this Agreement. The Parties further agree and acknowledge that, if they are asked about any of the Lawsuits by any individual or entity who is not a Party to this Agreement (including via public or private posts and messages on Facebook and/or inquiries from any press), they will respond: "The matter has been resolved. I have no further comment." The Parties expressly understand and acknowledge that they are not permitted under any circumstances to reveal the details or existence of this Agreement to any individual or entity not named as a Party hereto.

## 6.    **Non-Disparagement and No Contact**

6.1    The Parties agree that they will not make any communications or engage in any conduct designed to disparage each other, including but not limited to their respective past or present officers, directors, employees, volunteers, agents, or attorneys or representatives regarding any of the alleged conduct or facts at issue in any of the Lawsuits, or the Lawsuits themselves. The Parties expressly acknowledge and understand that this Section 6.1 applies to oral and written communications of all kind and prohibits each Party from making, publishing, sending any post, comment, message, or other writing on Facebook, or any other medium about any of the facts or conduct alleged in the any of the Lawsuits or the testimony or other evidence obtained during the course of the Lawsuits. The Parties specifically agree that this prohibition does not apply to "liking" any such posts. The Parties further specifically agree that this prohibition does not apply to any actions or inactions taken or not taken as the administrator of Facebook groups.

6.2    The Parties agree that for a period of one (1) year - from September 21, 2021 to September 21, 2022 - they will not make any communications or engage in any conduct designed to disparage each other, or their respective past or present officers, directors, employees, volunteers, agents, or attorneys or representatives any matter whatsoever. The Parties agree and understand that this Section 6.2 applies to, and prohibits them from making, publishing, sending, any post, comment, message, or other writing about each other, or any other past or present officers, directors, employees, volunteers, agents, or attorneys or representative to any person or entity during the one (1) year period. The Parties specifically agree that this prohibition does not apply to "liking" any such posts. The Parties further specifically agree that this prohibition does not apply to any actions or inactions taken or not taken as the administrator of Facebook groups.

6.3    The Parties agree and acknowledge that, following the expiration of the one (1) year period set forth in Section 6.2 of this Agreement, the provisions of Section 6.1 will remain in effect.

6.4    The Parties agree and acknowledge that, upon her execution of this Agreement, they will not contact, or attempt to contact each other by any means, including but not limited to, via telephone, social media, text message, or any other written form of communication. As part of this Section 6.4, the Parties agree they, nor anyone acting on their behalves, will not enter any property owned by each other without their prior written consent, including but not limited to the animal shelter owned by PALS and located at 4287 State Hwy 47, Hawk Point, MO 63349 and 151 Brook Hill Lane, Troy, MO 63379. The Parties further agree that such written consent will not be unreasonably withheld when it pertains to the return to animals chipped and registered to each other's respective shelter.

BP  10/27/21    RP 10-27-21

3V 10/27    MLutke NJ fp 10/27/21    Page **4** of **10**

6.5     Roberts further agrees and acknowledges that, upon her execution of this Agreement, she will not have any communications regarding PALS or Jennifer Raeker-Bickel with any of PALS' corporate donors, vendors, or sponsors (including but not limited to, Blue Dot, LLC d/b/a Pet Supplies Plus) or interfere, or attempt to interfere with PALS' business relationships with them.

6.6.    As part of this Agreement, Roberts represents and acknowledges that she has not caused or communicated any complaint or report to any governmental agency, including but not limited to the Missouri Department of Agriculture, Missouri Attorney General's Office, or any local law enforcement department, regarding any of the Claims/Liabilities defined in ¶1.2 above, against or relating to PALS, Raeker-Bickel, Barbra Cherry, Erica Sloan, Teresa M. Turley, or Laura Di Stefano, at any time prior to the Effective Date of this Agreement.  Roberts further agrees that she will not cause or communicate any complaint or report regarding the Claims/Liabilities defined in ¶1.2 above in the future.

6.7     The Parties further agree and acknowledge that they will act in good faith in complying with Sections 6.1-6.6 and adhering to the terms contained therein.  Each Party also agrees and understands that the other Parties are reasonably relying on the representations made in Sections 6.1-6.6 of this Agreement and that they are a material inducement to their assent to this Agreement.

## 7.    **Representations**

7.1     The Parties represent, agree, and acknowledge that neither Party nor their attorneys or insurer, affiliates, subsidiaries, agents, or representatives have warranted or represented any tax consequences of this Agreement.  The Parties further acknowledge and agree to rely on their own legal and/or tax advisors with respect to any tax aspects or consequences of this Agreement.

7.2     The Parties represent, agree, and acknowledge that the terms, agreements and understandings contained in this Agreement are fully and completely expressed herein and that they are contractual and not a mere recital.

7.3     The Parties further represent, agree, and acknowledge that in making Settlement Payment pursuant to this Agreement, they have reasonably relied on the representations and warranties made by each other herein and that those representations and warranties are a material inducement such Confidential Settlement Payment as part of this Agreement.

7.4     The Parties affirm and acknowledge that they and/or their respective attorneys and representatives have not disclosed the contents of this Agreement or any of its terms with any individual or entity who is not a Party named as such herein prior to execution of this Agreement.

## 8.    **Miscellaneous Provisions**

8.1     All parties to the Agreement agree to fully cooperate and execute any and all supplementary documents and take all additional actions that may be necessary to give full force and effect to the terms and intent of this Agreement.  This includes, but is not limited to, the dismissals with prejudice of all claims set forth in Section 3 of this Agreement and any action necessary to maintain the confidentiality and non-disparagement provisions of this Agreement.

BF 10/27/21      Tcp 10/27/21              Page **5** of **10**
BW 10/27
                    McCuthe by Rcp 10-27-21

8.2     Each Party hereto shall be solely responsible for payment of such Party's own attorneys' fees and costs in connection with the Lawsuits and the negotiation, documentation and implementation of this Agreement, including without limitation the dismissals of the Lawsuits and all other matters arising from or related to the Lawsuits.

8.3     This Agreement is the final expression of the Parties' agreement on the compromise and settlement of the Lawsuits, and this Agreement shall be binding upon and inure the benefit of the executors, administrators, personal representatives, heirs and successors of each Party hereto.

8.4     This Agreement shall be binding upon the Parties hereto and their respective agents, representatives, attorneys, parent companies, subsidiaries, affiliated entities, shareholders, members, participants, directors, officers, employees, predecessors in interest, heirs, successors, assigns, trustees, beneficiaries and any other persons or entities connected or related to them or any of them.

8.5     This Agreement contains the entire and integrated understanding of the Parties with respect to the subject matter hereof and supersedes any and all prior and/or contemporaneous oral or written agreements, understandings, representations, inducements, promises, warranties, and conditions between the Parties.  No other promises, representations or other inducements have been made by either party to the other.

8.6     No modification, termination or waiver of this Agreement shall be valid unless in writing and signed by all of the Parties.

8.7     Should any portion of this Agreement be declared or determined by any court to be unenforceable, invalid, or void, the validity of any other term or provision shall not be affected adversely, and this Agreement shall continue to be binding on the Parties as if said unenforceable, invalid, or void term had not been included herein.

8.8     This Agreement has been jointly negotiated and drafted by the Parties or their respective counsel, and the terms shall be construed as a whole according to its fair and reasonable meaning and purpose without regard to which party may have drafted particular provisions.

8.9     Each Party shall take any and all steps that may be required to give effect to the provisions of this Agreement, and each Party shall execute, acknowledge, sign and deliver any and all documents that the other party may reasonably require or find necessary for the purpose of giving full force and effect to the terms of this Agreement.

8.10    Aside from any claims filed in the Lawsuits described in the Recitals of this Agreement, each Party represents that she or it has not filed any other complaint, claim, or suit of any kind in any court against any of the other Parties.

8.11    The captions herein are solely for the convenience of the Parties and are not a part of this Confidential Agreement and shall not have effect upon its construction or interpretation.

BP 10/27/21     TBP
             10-27-21
SW 10/27     H.Lutke 10-27-21
                by Rw

Page **6** of **10**

8.12.   This Confidential Agreement may be executed in one or more identical counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument.  A PDF copy of a signature shall be as valid as an original.

BF 10/27/21,   FeP 10-27-21
3rS 10/27   M Lutkery ReP 10-27-21

## COUNTERPART SIGNATURE PAGE TO
## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

IN WITNESS WHEREOF, Jennifer Raeker-Bickel has caused this Confidential Agreement to be executed to be effective on the Effective Date.

Jennifer-Raeker-Bickel

Date:

COUNTERPART SIGNATURE PAGE TO
<u>CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE</u>

**IN WITNESS WHEREOF**, Pets A Lone Sanctuary of Lincoln County (PALS) has caused this Confidential Agreement to be executed to be effective on the Effective Date.

Pets A Lone Sanctuary of Lincoln County

By: _____

Print Name: Jennifer Rocker Bickel

Title: President

Date: 10-27-21

## COUNTERPART SIGNATURE PAGE TO
## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**IN WITNESS WHEREOF,** Edna Roberts has caused this Confidential Agreement to be executed to be effective on the Effective Date.

**Edna Roberts**

_Edna Roberts_

10-27-21
DATE

**Petition Filed Under Seal**

fraudulently, deceitfully and/or with bad faith.  Accordingly, at trial of this matter, Plaintiffs are

entitled to an adverse evidentiary inference whereby Roberts must admit that the missing evidence

would have been unfavorable to any asserted defenses or positions she may assert.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Roberts, that the

Court enter an award of damages in excess of $25,000, for pre-and post-judgment interest at the

highest rate permitted by law, for an award of her recoverable costs and fees incurred herein and

that the Court provide Plaintiffs any such other and further relief it deems just and proper under

the circumstances.

RESPECTFULLY SUBMITTED,

THE COOK GROUP, PLLC


*/s/      Brian M. Wacker*
Brian M. Wacker, #61913
701 Market Street, Suite 1225
Saint Louis, Missouri 63101
Ph:      (314)-882-9869
bwacker@cookgrouplegal.com

ATTORNEYS FOR PLAINTIFFS
PETS A LONE SANCTUARY &
JENNIFER RAEKER-BICKEL

.

Electronically Filed - LINCOLN COUNTY - August 16, 2022 - 12:52 PM